FILED: 9/18/2019 3:28 PM
Denton County District Clerk
By: Dylan Ladwig, Deputy

CAUSE NO. 19-8951-16 _____

| | | |
|---|---|---|
| CIG RETAIL PROPERTIES, INC. | § | IN THE DISTRICT COURT |
| | § | |
| **Plaintiff** | § | |
| | § | |
| v. | § | ____ JUDICIAL DISTRICT |
| | § | |
| PHILADELPHIA INDEMNITY | § | |
| INSURANCE COMPANY | § | |
| | § | |
| **Defendant** | § | DENTON COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, CIG Retail Properties, Inc., files this original petition against Defendant, Philadelphia Indemnity Insurance Company, in which Plaintiff is seeking monetary relief of over $1,000,000. In support of this petition, Plaintiff would show this honorable court as follows:

### I. Parties, Venue and Discovery Level

Plaintiff, CIG Retail Properties, Inc. (hereafter "CIG"), is a Texas limited partnership that owns the property at 1565 West Main Street, Lewisville, Texas 75067, also known as the Garden Park Shopping Center (hereinafter "Garden Park") which is the subject of this lawsuit. Plaintiff is also the insured on that property in this first-party insurance lawsuit.

Defendant, The Philadelphia Indemnity Insurance Company (hereafter "Philadelphia"), is a foreign fire and casualty insurance company doing business in Texas that can be served with process by serving its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

The venue of this case is proper in Denton County, Texas under Sections 15.002 and 15.032 of the Texas Civil Practices and Remedies Code and Section 17.56 of the Deceptive Trade Practices-Consumer Protection Act (hereafter the "DTPA").

Plaintiff intends to conduct discovery in this case under Level 3 pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

## II. Agency and Respondent Superior

Whenever in this petition it is alleged that the Defendant did any act or thing, it is meant that the Defendant or its agents, officers, servants, employees, or representatives did such act or thing. Such act or thing was also done with the full authorization or ratification of Defendant or done in the normal routine, course, and scope of the agency or employment of Defendant or its agents, officers, servants, employees, or representatives. In a July 25, 2019 letter, Philadelphia accepted liability for the acts and omissions of its employees, representatives and agents concerning the claims that are the subject matter of this suit, including, without limitation, Vericlaim, Inc., Joel Dahlvig, Gregory Hagupian, Lisa McManus, Kean Jenner, and Haag Engineering.

## III. Conditions Precedent

All conditions precedent to recovery have occurred or been performed.

## IV. Facts of the Case

CIG purchased an insurance policy from Philadelphia (Policy Number PHPK1602624) to cover property losses at Garden Park for the policy period of February 1, 2017 to February 1, 2018. On or about April 10, 2017, during the subject policy period, a wind and hail storm caused substantial damage to the roofs of Garden Park located at 1565 W. Main Street, Lewisville, Texas 75067. Thereafter, CIG reported this loss to Philadelphia and its agents, who assigned this loss claim number PHRA18011142352.

For this loss, Philadelphia hired an independent adjuster, Joel Dahlvig of Vericlaim/Sedgwick, to assist with the inspection and investigation of the claim. CIG believes

that Philadelphia hire adjusters like Dahlvig because they are biased for insurers and Philadelphia knows that these adjusters will conduct unreasonable and result-oriented investigations and will give Philadelphia low-balled and result-oriented estimates on which Philadelphia can either deny or under pay an insured's storm damage insurance claim. CIG hired a roofing company, IFC Roofing, to assist with the inspection and estimating of the storm damage at Garden Park.

Subsequently, Philadelphia and Dahlvig retained Keen Jenner of Haag Engineering Company to assist with the investigation on the claim and the inspection of the property. On or about March 8, 2018, Dahlvig, Jenner, and Adam Ulrich of IFC Roofing inspected the roofs and exteriors of the buildings at Garden Park. CIG believes that Philadelphia and Dahlvig hired Jenner because they know that Haag and Jenner are biased for insurance companies and will give them favorable, result-oriented investigations and reports on which Philadelphia and Dahlvig can either deny or low-ball insurance claims for storm damage to an insured's property. Texas courts have previously found that Haag is a biased engineering company for insurers.

Thereafter, CIG sent a bid to Philadelphia in the amount of $94,135.13 by Advantage A.C. Solutions for repairs to the air conditioning units at Garden Park due to hail damage from the subject storm. Philadelphia agreed to cover this portion of the loss and issued payment on April 6, 2018 in the amount of $69,135.13, which represented the bid amount of $94,135.13 less the $25,000 deductible. In this respect, Philadelphia agreed that hail from the subject storm damaged the air conditioning units on the roofs at Garden Park, but then inconsistently and erroneously determined that this same hail did not damage the surfaces of the roofs.

True to form, in an April 18, 2018 report, Jenner made the following biased and unsubstantiated conclusions:

(1) The roof had been subjected to hailstone impacts on multiple occasions with the larger hailstones falling in the distant past (which happens to be before Philadelphia insured Garden Park);

(2) The roof had been subjected to repeated patching with patches having been applied as early as 2002;

(3) The EPDM membranes on two of the building roofs had a modest number of tears (Jenner found only 17 tears during his biased inspection). Possibly, with cleaning and further inspection the roof might reveal a few more. At least two tears were mechanically inflicted. Two other tears on the west roof also were consistent with mechanical contact rather than the random effects of hailstone impact. The other tears, including the associated dents in the underlying insulation substrate, are consistent with hailstone impacts. The large number of patches indicates that there are more fractures in the membrane than those observed;

(4) The newer 2015/16 TPO membrane on the north building's addition exhibited no fractures or other damage caused by hailstone impacts;

(5) Tears in the EPDM membranes were not caused during a hailstorm within the past year and possibly the last two years and those membranes were damaged in a storm or storms many years in the past (which again happened to be before Philadelphia insured Garden Park);

(6) Tears in the membrane could be repaired by application of patches; and

(7) The TPO roof over the north building's addition, installed in 2016, was not damaged by hailstone impacts.

Although Jenner found that hail had caused damage to the roofs at Garden Park, he concluded that this damage was old damage. Jenner's biased and unsubstantiated findings allowed Philadelphia to deny the claim for storm damage to CIG's roofs from the April 10, 2017 storm since Philadelphia did not insure Garden Park when Jenner erroneously alleged that the damage occurred. As a result, in a May 9, 2018 letter, Philadelphia informed CIG that they would not be paying anything further than the covered portion of the loss of $69,135.13 and denied the remainder of the claim. By using Jenner and Haag and basing their claims on these biased consultants. Philadelphia and Dahlvig violated Section 541.060 of the Texas Insurance Code by refusing to pay a claim without conducting a reasonable investigation on that claim.

4

After this denial, CIG hired a Texas licensed public adjuster and loss consultant, Jason Lanier of J.A. Lanier & Associates, Inc. (hereinafter "Lanier"), to assist CIG with its storm damage insurance claim on Garden Park. CIG requested that Lanier inspect the property and prepare an estimate for the storm damages to Garden Park from the April 10, 2017 hail storm. After his roof inspection, Lanier told Dahlvig that a full roof replacement would be required to remediate the hail damage to the roofs of Garden Park from the April 10, 2017 storm. Thereafter, Mr. Lanier estimated the cost of this roof replacement at $3,333,442.45.

CIG and Lanier also retained an experienced loss and roofing consultant, Gary Treider of Chaparral Consulting and Forensics (hereinafter "Treider"), to investigate and report on the hail and windstorm damage to Garden Park from the April 10, 2017 storm. In his October 14, 2018 report, Treider determined the following:

(1) the roofs of the property were impacted by hail on April 10, 2017;

(2) the hail caused approximately 36 fractures to the paper facer on the ISO insulation;

(3) the paper facer factures no longer made the roof membrane bonded to the ISO roof insulation, therefore leaving the roof unable to resist uplift wind forces that it was designed and rated for;

(4) the paper facer fractures adversely affect the fire rating of the roof assembly;

(5) due to the EPDM roof membranes being de-bonded (loose), the tension where they are attached to parapet walls, curbs, and vents becomes much greater and leads to tearing of the membrane and causes it to pull away from the points of attachment;

(6) significant roof leaks occurred as a result from the April 10, 2017 hail storm; and

(7) the EPDM roofs on the buildings of the property are not repairable and should be replaced.

A copy of his report was sent to Philadelphia and its adjusters.

Thereafter, Philadelphia and its adjusters requested a re-inspection of the property. On January 4, 2019, Philadelphia, its adjusters, and its consultants re-inspected Garden Park. Despite

5

receiving the additional information and after re-inspecting the obvious storm damage to the subject roofs, Jenner issued a February 26, 2019 supplemental report stating that his original conclusions remained unchanged. Despite knowing that the roofs of Garden Park needed to be replaced and after receiving Treider's report and re-inspecting the property, Philadelphia informed CIG that they were still denying the claim based on Mr. Jenner's reports.

After receiving Treider's report and re-inspecting Garden Park, liability on CIG's insurance claim should have become reasonably clear to Dahlvig and Philadelphia. Nevertheless, Dahlvig and Philadelphia choose to ignore Treider's report and continued to rely on their biased engineer. In doing so, Dahlvig and Philadephia have violated Section 541.060 of the Texas Insurance Code for failing to attempt in good faith to effective a prompt, fair and equitable settlement of a claim on which the insurer's liability had become reasonably clear. To date, Philadelphia and its adjusters have failed and refused to pay CIG any policy benefits for the proper repair of the storm damage to the roofs at Garden Park from the April 10, 2017 storm. As a result, Philadelphia owes CIG $3,333,442.45 on its storm damage insurance claim.

## V. Cause of Action for Breach of Contract

According to the insurance policy that Plaintiff purchased, Philadelphia has the duty to investigate and pay Plaintiff policy benefits for claims made for damages to Garden Park caused by hail and windstorm. The subject wind and hail storm caused substantial damage to Plaintiff's property, which damage is covered under Plaintiff's insurance policy with Philadelphia. Philadelphia has breached its contractual obligation and the subject insurance policy by failing to pay Plaintiff policy benefits for the cost to properly repair the wind and hail storm damage to its property. Philadelphia has also breached any contractual provisions on timely investigating, adjusting, and paying Plaintiff's storm damage insurance claim. As a result of these breaches of

contract, Plaintiff has suffered the damages that are described in this petition.

## VI. Causes of Action for Violation of Chapter 542 of the Insurance Code

Philadelphia's conduct that is described in this petition violates Chapter 542 of the Texas Insurance Code. Within 15 days after the receipt of either actual or written notice of Plaintiff's insurance claim, Philadelphia did not request from Plaintiff any items, statements, and forms that it reasonably believed at that time would be required from Plaintiff for this claim. As a result, Philadelphia has violated Chapter 542 by failing to accept or reject Plaintiff's claim in writing within 36 days after receiving either actual or written notice of its claim. Philadelphia has also violated Section 542.058 by failing to pay Plaintiff's claim within 75 days after it received either actual or written notice of the claim or within 60 days after any other applicable statutory period. In the event it is determined that Philadelphia owes Plaintiff any additional monies, then Philadelphia has automatically violated Chapter 542 of the Texas Insurance Code.

## VII. DTPA Causes of Action

Plaintiff incorporates all the allegations in this petition for these causes of action against Defendant Philadelphia under the provisions of the DTPA. Plaintiff has met all conditions precedent to bringing these causes of action against Defendant. Specifically, Defendant's violations of the DTPA include, without limitation, the following matters:

A. By its acts, omissions, failures, and conduct that are described in this petition, Defendant Philadelphia has violated Sections 17.46(b)(5), (7), (12), and (20) of the DTPA. In this respect, Defendant's violations include, without limitation, (1) its unreasonable delays in the investigation, adjustment and resolution of Plaintiff's claims, (2) its failure to properly investigate Plaintiff's claim, (3) its hiring of biased consultants to obtain result-oriented reports and estimates to assist the insurer in delaying Plaintiff's insurance claim, and (4) its failure to pay for the proper repair of Plaintiff's property on which Defendant's liability had become reasonably clear;

B. As described in this petition, Defendant represented to Plaintiff that the subject

insurance policy and Defendant's adjusting and investigative services had characteristics or benefits that they did not have, which gives Plaintiff the right to recover under Section 17.46(b)(5) of the DTPA;

C. As described in this petition, Defendant represented to Plaintiff that the subject insurance policy and Defendant's adjusting and investigative services were of a particular standard, quality, or grade when it was of another in violation of Section 17.46(b)(7) of the DTPA;

D. As described in this petition, Defendant represented to Plaintiff that the subject insurance policy and Defendant's adjusting and investigative services conferred or involved rights, remedies, or obligations that it did not have, which gives Plaintiff the right to recover under Section 17.46 (b)(12) if the DTPA;

E. By representing that Defendant would pay to repair the damages caused by hail and windstorm and then not doing so, Defendant has violated Sections 17.46(b)(5), (7), and (12) of the DTPA;

F. Defendant has breached an express warranty that the damage caused by hail and windstorm would be covered under the subject insurance policy. This breach entitles Plaintiff to recover under Sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA;

G. Defendant's actions, as described in this petition, are unconscionable in that it took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA; and

H. Defendant's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50(a)(4) of the DTPA.

All of the above-described acts, omissions, and failures of Defendant are a producing cause of Plaintiff's damages that are described in this petition.

### VIII. Causes of Action for Unfair Insurance Practices

Plaintiff incorporates all the allegations in this petition for these causes of action against Defendant Philadelphia under the Texas Insurance Code. Plaintiff has satisfied all conditions precedent to bringing these causes of action. By its acts, omissions, failures, and conduct, Philadelphia has engaged in unfair and deceptive acts or practices in the business of insurance in

violation of Chapter 541 of the Texas Insurance Code. Such violations include, without limitation, all the conduct described in this petition plus Defendant's failures to properly investigate Plaintiff's claim. They also include Defendant's unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim and Defendant's failure to pay for the proper repair of Plaintiff's property on which its liability had become reasonably clear. They further include Defendant's hiring of biased adjusters and consultants to obtain result-oriented reports to assist the insurer in denying Plaintiff's insurance claim, which does not constitute a reasonable investigation. In addition, Defendant failed to look for coverage and give Plaintiff the benefit of the doubt. Specifically, Defendant is guilty of the following unfair insurance practices:

A. Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

B. Engaging in unfair claims settlement practices;

C. Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue;

D. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim on which Defendant's liability had become reasonably clear;

E. Failing to affirm or deny coverage of Plaintiff's claim within a reasonable time;

F. Refusing to pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim; and

G. Failing to provide promptly to a policyholder a reasonable explanation of the basis in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

Philadelphia has also breached the Texas Insurance Code when it breached its duty of good faith and fair dealing. Defendant's conduct as described herein has resulted in Plaintiff's damages that are described in this petition.

### IX. Cause of Action for Breach of Duty of Good Faith and Fair Dealing

Plaintiff incorporates all the allegations of the preceding paragraphs for this cause of action. By its acts, omissions, failures, and conduct, Philadelphia has breached its common law duty of good faith and fair dealing by denying Plaintiff's entire claim without any reasonable basis and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for its denial. Philadelphia has also breached this duty by unreasonably delaying payment of Plaintiff's entire claim and by failing to settle Plaintiff's claim because Philadelphia knew or should have known that it was reasonably clear that the claim was covered. This conduct of Philadelphia is the proximate cause of Plaintiff's damages.

### X. Waiver and Estoppel

Defendant has waived and is estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights or denial letters previously sent to Plaintiff.

### XI. Damages

The above described conduct of Defendant has caused Plaintiff's damages, which include, without limitation, the cost to properly repair its property in the amount of $3,333,442.45 and any investigative and engineering fees incurred during the claim process. Plaintiff is also entitled to recover the amount of its claim plus an eighteen percent per annum interest on that amount against Philadelphia as damages under Section 542.060 of the Texas Insurance Code. All the damages described in this petition are within the jurisdictional limits of this Court.

### II. Additional Damages

Defendant has also "knowingly" and "intentionally" committed deceptive trade practices

and unfair insurance practices as those terms are defined in the applicable statutes. As a result, Plaintiff is entitled to additional damages under Section 17.50(b)(1) of the DTPA and Chapter 541 of the Texas Insurance Code.

### XIII. Exemplary Damages

Philadelphia's breach of its duty of good faith and fair dealing owed to Plaintiff was done intentionally and with "malice" and "gross negligence" as those terms are defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Defendant are the type of conduct that the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiff seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Defendant for its wrongful conduct and to set an example to deter Defendant and others similarly situated from committing similar acts in the future.

### XIV. Attorneys' Fees

As a result of Defendant's conduct that is described in this petition, Plaintiff has been forced to retain the undersigned attorneys to prosecute this action and has agreed to pay reasonable attorneys' fees. Plaintiff is entitled to recover these attorneys' fees under Chapter 38 of the Texas Civil Practices and Remedies Code; Chapters 541 and 542 of the Texas Insurance Code; and Section 17.50 of the DTPA.

### XV. Rule 194 Requests for Disclosure

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendant is requested to disclose, within 50 days of service of this request, the information or material described in Rule 194.2(a) through (l).

WHEREFORE, PREMISES CONSIDERED, Plaintiff *demands a trial by jury* and also

requests that Defendant be cited to appear and answer, and on final hearing, the court award

Plaintiff a judgment against Defendant for the following:

1. Actual, economic, additional, and exemplary damages in an amount within the jurisdictional limits of the court;

2. Reasonable attorneys' fees through trial and on appeal;

3. Pre-judgment and post-judgment interest as provided by law;

4. Costs of court; and

5. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

*Loree & Lipscomb*
The Terrace at Concord Park
777 East Sonterra Blvd, Suite 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile: (210) 404-1310

By: _____
Robert W. Loree
State Bar No. 12579200
Email: rob@lhllawfirm.com
Stephen M. Fields
State Bar No. 24096598
Email: stephen@lhllawfirm.com
Cassandra Pruski
State Bar No. 24083690
Email: cassie@lhllawfirm.com

**Attorneys for Plaintiff**